IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MAURICE JOHNSON,

Plaintiff,

v.

KAREN LARSON-SMITH *et al.*,

Defendants.

OPINION & ORDER

13-cv-309-wmc

---

In this prisoner civil rights litigation, plaintiff Maurice Johnson claims that staff members at New Lisbon Correctional Institution ("NLCI") and Columbia Correctional Institution ("CCI") were deliberately indifferent to his mental health needs and placed him in a filthy, cold cell for two weeks. Defendants have moved for partial summary judgment on the grounds that Johnson failed to exhaust his administrative remedies before filing this lawsuit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (Dkt. #33.) The court disagrees and will deny that motion. Additionally, Johnson seeks assistance in locating *pro bono* counsel. (Dkt. #25.) After reviewing the information Johnson has provided, and taking into account the complexity of Johnson's claims, the court agrees that this is an appropriate case for counsel and will attempt to locate a volunteer willing to take this case.

OPINION

## I. Exhaustion

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined

in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In the Seventh Circuit, exhaustion of administrative remedies is a "condition precedent to suit." *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002); *see also Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) (holding that where administrative remedies have not been exhausted, "the district court lacks discretion to resolve the claim on the merits"). Moreover, the PLRA requires "proper exhaustion; that is, the inmate must file a timely grievance utilizing the procedures and rules of the state's prison grievance process." *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011) (internal quotation marks omitted). Where a grievance is rejected on procedural grounds, rather than on the merits, the inmate has failed to exhaust. *See id.* at 722.

On the other hand, prison officials "may not take unfair advantage of the exhaustion requirement." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Inmates need only exhaust remedies that are *available*, 42 U.S.C. § 1997e(a), and "a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

There are three separate claims at issue here: (1) the alleged failure of Drs. Larson-Smith and Frodin to provide mental health care while Johnson was incarcerated at NLCI; (2) the alleged failure of Drs. Buhr, Harris, Laurent, Suliene and Health Services Unit Manager Anderson to force-feed Johnson while he was incarcerated at CCI; and (3) the alleged unconstitutional conditions of confinement in his observation cell at CCI. Defendants concede that Johnson exhausted his remedies with respect to his force-feeding claim. (Defs.' Br. (dkt. #34) 3.) The court addresses each of the other two claims

separately to determine whether Johnson has properly exhausted his available administrative remedies.

**A. Failure to Provide Mental Health Services**

With respect to the claim for failure to provide mental health care, defendants have presented the affidavit of Corrections Complaint Examiner ("CCE") Welcome Rose, who claims to have no record of any offender complaints filed by Johnson "regarding lack of mental health treatment at NLCI." (Welcome Rose Aff. (dkt. #35) ¶ 12.) In response, Johnson presents his own affidavit and supporting documentation suggesting that the situation is not as clear-cut as defendants' opening brief would suggest.

According to Johnson, on February 27, 2012, he filed a grievance describing the repeated cancellation and rescheduling of his psychological services appointments. A true and correct copy of that grievance is attached to his declaration as Exhibit A. (Dkt. #37-1.) The next day, Johnson received his materials back, accompanied by a letter from Institution Complaint Examiner ("ICE") Lynn Washetas. Washetas indicated the materials were being returned because "[c]omplaints shall contain only one issue and that issue shall be clearly identified" and "[b]efore this complaint is accepted, you need to attempt to resolve the issue by contacting PSU Supervisor, Dr. Frodin." (Maurice Johnson Decl. Ex. B (dkt. #37-2).) Washetas also stated that "[e]ach incident should be submitted as a separate complaint." (*Id.*)

Johnson avers that he had already identified the issue of which he complained. (*See* Maurice Johnson Decl. Ex. A (dkt. #37-1) 3 ("**COMPLAINT ISSUE:** That Dr. Larson-Smith has continuously reschedul[ed] my appointments concerning my serious

psychological problems I am having due to her constant [canceling] and rescheduling of my appointment which has denied me the treatment I need.") (emphasis in original).) Furthermore, his original offender complaint indicates that on two separate occasions, Johnson contacted the clinical services supervisor office directly. (*Id.* at 2 ("I sent a[] psychological request directly to clinical services supervisor office complaining about the actions or inactions of Dr. Larson-Smith . . . On 11-22-11, I again sent a request directly to Dr. Flodean-Clinical (*sic*)[.]").) Finally, Johnson argues that the separate-complaint requirement did not make sense, as his grievance focused on a continuing pattern of appointment cancellations and denials of treatment.

Believing he had already complied with Washetas's instructions, Johnson simply re-submitted his materials. On February 29, 2012, however, Washetas returned Johnson's complaint a second time, again accompanied by a letter, which is attached to Johnson's declaration as Exhibit C. (Dkt. #37-3.) The letter states in part, "Your attempted filing is being returned to you a second time for the reason(s) cited in the ICE return letter previously sent to you. If you again attempt to file without following the direction(s) in that letter, this office will not respond and your submissions will not be returned to you."

Johnson avers that he chose not to re-file his complaint at this point because he believed that Washetas would not process it and would either keep his documents or throw them away. Instead, Johnson sent a letter to the Secretary of the DOC on March 11, 2012, a copy of which is attached to his declaration as Exhibit D. (Dkt. #37-4.) Johnson explained how he had attempted to satisfy Washetas's directions and complained of her continued refusal to process his complaint.

On March 28, 2012, having received no response to his first letter, Johnson submitted a second letter to the Secretary of the DOC. (Dkt. #37-5.) In response, Johnson received two letters from Welcome Rose, both declining to investigate Washetas's decision and instructing him to use the Inmate Complaint Review System to address his complaint. (Dkt. #37-6, #37-7.) At that point, Johnson avers, he gave up, having "[done] all [he] could to put them on notice and give them an opportunity to investigate." (Maurice Johnson Decl. (dkt. #37) ¶ 20.)

Based on the foregoing, there is no real dispute that Johnson did not properly exhaust the prison's administrative remedies, at least technically -- his grievances were returned to him without processing and never recorded in the ICRS. To meet the requirements of the PLRA, however, Johnson need not dot every "i" and cross every "t." Johnson need only exhaust those remedies that are available to him. In Johnson's view, when ICE Washetas improperly refused to accept his grievances not once but twice, she rendered the ICRS unavailable to him for practical purposes.

On this record, the court finds that there are genuine disputes of fact as to whether the grievance process was available to Johnson. This finding is supported by the Seventh Circuit's recent, albeit admittedly non-precedential, decision in *Ajala v. Tom*, 592 F. App'x 526 (7th Cir. 2015), which provides helpful guidance in ascertaining when a remedy can be deemed "unavailable." In that case, the plaintiff-inmate, Ajala, tried to file two complaints, which were returned to him unprocessed on the grounds that he did not comply with the one-issue-per-complaint rule of Wis. Adm. Code § DOC 310.09(1)(e). *Id*. at 527. The next week, Ajala filed three more complaints. The first asserted that his two complaints from the previous week were unjustly returned. The third was related to the alleged overtightening of

his handcuffs. *Id*. The handcuff complaint was returned unprocessed because it violated the two-complaints-per-week rule of Wis. Adm. Code § DOC 310.09(2). *Id*. Ajala resubmitted it the next week, but had it returned again because it was now untimely. *Id*. Ajala then filed a lawsuit on the handcuff claim, and defendants moved for summary judgment on the grounds that he had failed to properly exhaust his remedies. This court granted that motion. *See Ajala v. Tom*, No. 13-cv-102-bbc, 2014 WL 905467 (W.D. Wis. Mar. 7, 2014).

On appeal, Ajala argued that "the prison made the grievance process unavailable by improperly refusing to process his first two complaints from the previous week, making it necessary for him to submit three complaints the next week." *Ajala*, 592 F. App'x at 527. The Seventh Circuit agreed that he had presented enough evidence to support a finding that administrative remedies were unavailable:

> If the district court were to find, based on the content of the first two complaints and the one-issue rule, that prison officials should have accepted those two complaints, Ajala would have had one fewer complaint to submit the following week. His handcuffs complaint would then have been only the *second*, and not third, timely complaint filed that calendar week. . . . If, as Ajala's evidence suggests, the prison staff improperly refused to process the first two grievances, they all but drove Ajala to expend one of his two-per-week grievances on that issue, thereby improperly impeding his access to the prison's two-per-week grievance procedure.

*Id.* at 528 (emphasis in original). Accordingly, the Seventh Circuit vacated the judgment and remanded for fact-finding through *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

As in *Ajala*, Johnson has presented sufficient evidence to support a finding that administrative remedies were rendered unavailable by Washetas's refusal to accept and process his complaints. In particular, Johnson submits an uncontroverted declaration, as

well as a copy of one of his two complaints to support his contention that, contrary to Washetas's letters, his complaint: (1) clearly identified the issue he intended to raise (the repeated cancelation of his appointments, resulting in the denial of mental health care); and (2) noted his two previous attempts to resolve the issue informally by contacting Dr. Frodin. Furthermore, the second letter he received from Washetas warned him *not* to re-submit his materials, unless he first corrected alleged "mistakes" that, according to Johnson, were never wrong in the first place. This evidence would appear to raise sufficient genuine disputes of fact as to whether Washetas "improperly refused to process the first two grievances." *Ajala*, 592 F. App'x at 528.

Moreover, in their reply, defendants do not dispute Johnson's version of events. Rather, they argue that once his complaint was rejected, he could have appealed that rejection to the warden pursuant to Wis. Adm. Code § DOC 310.11(6). As Johnson points out, however, while an officially "rejected" complaint is appealable under this section, a complaint that is informally returned unprocessed is not.[1] Indeed, the Administrative Code itself distinguishes between the two concepts, discussing return without processing in one section and rejection in another. *Compare* Wis. Adm. Code § DOC 310.09(3), *with* Wis. Adm. Code § DOC 310.11(6). Accordingly, the evidence and regulations would support a finding that an appeal process was unavailable to Johnson once Washetas had twice returned his complaint without processing it. *See Naseer v. Belz,* No. 13-cv-821-jdp, 2014 WL 5494440, at *4 (W.D. Wis. Oct. 30, 2014) (recognizing that "there does not appear to be an appeals process" for the decision of an ICE to return grievances unprocessed).

[1] Johnson moved to file a short sur-reply to address the difference between grievances that are rejected and those that are returned without being processed. (Dkt. #41.) That motion will be granted.

Regardless, defendants have failed to "establish affirmatively that the evidence is so one-sided that no reasonable fact finder could find that the plaintiff was prevented from exhausting his administrative remedies." *Santiago v. Anderson*, 496 F. App'x 630, 636 (7th Cir. 2012). Because defendants bear the affirmative burden of establishing a failure to exhaust administrative remedies, *Massey v. Helman,* 196 F.3d 727, 735 (7th Cir. 1999), this means that summary judgment on this claim will be denied.

## II. Conditions of Confinement

Next, defendants have moved to dismiss in part Johnson's conditions of confinement claim. Defendants concede that Johnson has exhausted with respect to claims that he did not receive a blanket or mattress while on observation status, but they contend that because Johnson made no mention of being forced to sleep on a blood-covered concrete floor, the court should dismiss that portion of his claim. Reviewing the grievance that Johnson filed and appealed, defendants are correct: while he complains of a denial of a mattress and observation blanket, Johnson does not allude to blood on the floor. (*See* Welcome Rose Aff. Ex. B (dkt. #35-2) 011.) Johnson responds that defendants expect too much in the grievance process and that his grievance broadly objected to "conditions of confinement while in observation status." That, he argues, is enough.

Johnson is correct that the standard as to the required content of administrative grievances is forgiving. The Seventh Circuit has held that as a general matter, grievances "must contain the sort of information that the administrative system requires." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). "When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is

sought." *Id.* at 650. "As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Id.*; *see also, e.g.*, *Westefer v. Snyder*, 422 F.3d 570, 580-81 (7th Cir. 2005) (substantive complaints about conditions at new facility were enough to place officials on notice that inmates challenged the transfers themselves); *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) (although grievance was at "the border of intelligibility," it "*did* complain that Garcia had committed a rape and that 'the administration don't do there (*sic*) job.' A generous construction of this grievance would have induced the prison to consider the possibility that the guards could have prevented this assault.").

On the other hand, defendants are correct that the grievance makes no mention of blood on the floor. There is no way that prison officials could infer that *particular* condition from the grievance that Johnson filed, even if they recognized that he challenged the conditions in observation as a broader principle.

Ultimately, the court concludes that dismissing a "portion" of Johnson's conditions of confinement claim does not make sense in light of the PLRA's lenient requirements for the content of grievances. Defendants were undisputedly on notice that Johnson was unhappy with the conditions in observation; they could also infer, from his complaints that he lacked a mattress and blanket, and presumably they would have known that he was being forced to sleep on a concrete floor. To hold that Johnson cannot support his allegations of unconstitutional conditions of confinement with additional *facts* that were not expressly mentioned in the grievance would be akin to requiring that he "lay out the facts" -- a position that the Seventh Circuit rejected in *Strong*. The court declines to impose such a

stringent standard, particularly when the Wisconsin Administrative Code contains no such requirement. *Cf. Strong*, 297 F.3d at 650 ("Strong's two grievances were comprehensible and contained everything that Illinois instructed him to include. Defendants can't complain that he failed to do more.").

## III. Motion for Assistance in Recruiting Counsel

Finally, Johnson has moved for assistance in recruiting *pro bono* counsel. (Dkt. #25.) Before deciding whether it is necessary to recruit counsel, a court must find that the plaintiff has made reasonable efforts to find a lawyer on his own and has been unsuccessful, or that he has been prevented from making such efforts. *Jackson v. Cnty. of McLean*, 953 F.2d 1070, 1072-73 (7th Cir. 1992). With his motion, Johnson includes rejection letters from three different law firms, all of which declined to assist him. (*See* dkt. #25-1.) This satisfies the threshold requirement that Johnson make reasonable efforts to find counsel on his own, which leaves the merits of Johnson's request.

The touchstone of a volunteer counsel inquiry is "whether the difficulty of the case -- factually and legally -- exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007). Said another way, the question is, "given the difficulty of the case, [does] the plaintiff appear to be competent to try it himself and, if not, would the presence of counsel [make] a difference in the outcome?" *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995) (quoting *Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993)).

Here, Johnson submits with his motion a psychological evaluation dated February 11, 2014, which details his lengthy history of psychiatric problems, including diagnoses of:

adjustment disorders; substance abuse; personality disorder not otherwise specified with paranoid, borderline and passive-aggressive features; and major depressive disorder. Johnson has attempted suicide on numerous occasions, and the examining psychologist described his "psychiatric presentation" as "quite complex," noting his limited ability to process information. (*See generally* dkt. #25-2.) Furthermore, Johnson argues, and the court agrees, that his case is complex and will almost certainly require expert testimony, particularly with respect to his claims of deliberate indifference to mental health needs and the need to force-feed him during a hunger strike. *See Dewitt v. Corizon, Inc.*, 760 F.3d 654, 658 (7th Cir. 2014) (district court abused its discretion by failing to recruit counsel where case presented "complicated medical matters, involve[d] varying recommended courses of treatment by numerous physicians, and required discovery into what constitutes reasonable care for medical professionals."). The force-feeding claim, in particular, will require inquiry into whether Johnson's hunger strike was a product of his mental illness. *See Freeman v. Berg*, 441 F.3d 543, 546-47 (7th Cir. 2006).

Finally, Johnson has now survived summary judgment based on a failure to exhaust his administrative remedies. Accordingly, this case will now proceed to the merits, meaning there are undoubtedly a number of ways in which counsel could assist. Although Johnson has done an able job litigating this case on his own thus far, he represents that he has done so only with the aid of a jailhouse lawyer who has since been transferred to a different institution. Thus, the court concludes that this case may well exceed Johnson's ability to try

it on his own, and present it coherently to the court or a jury, and it will exercise its discretion to recruit a volunteer willing to represent Johnson *pro bono*.[2]

ORDER

IT IS ORDERED that:

1) Plaintiff Maurice Johnson's motion for assistance in recruiting counsel (dkt. #25) is GRANTED; all deadlines in this case are STRUCK pending recruitment.

2) Defendants' motion for partial summary judgment (dkt. #33) is DENIED.

3) Plaintiff's motion for leave to file a sur-reply (dkt. #41) is GRANTED.

4) Defendants' motion to stay dispositive motion deadline (dkt. #45) is DENIED AS MOOT.

Entered this 15th day of June, 2015.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge

[2] Obviously, if the court is successful, plaintiff's counsel will need some relief from the current schedule. Accordingly, all remaining deadlines will be struck in this case and a scheduling conference will be held promptly following an appointment of counsel to get this case back on track.